FILED
2025 Aug-22 AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, November 4, 2022 11:16:28 AM |
| To: | AMANDA@COXSTANSBERRY.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Clayton Homes, Inc Claim No. 10295792 John Lynn |
| Attachments: | kcxgyxuonam6meb4twd2_13921386.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 4, 2022

Amanda Stansberry
Cox & Stansberry, LLC
3535 GRANDVIEW PARKWAY
SUITE 310
BIRMINGHAM, AL 35243

RE: Long Term Disability (LTD) Benefits
Clayton Homes, Inc
Claim #: 10295792
Claimant: John Lynn

Dear Amanda Stansberry:

We reviewed your appeal request on behalf of John Lynn for Long Term Disability ("LTD") benefits and maintain the decision to deny benefits beyond August 21, 2022.

**Initial Claim Decision**

Mr. Lynn submitted a claim for his absence from work as of February 22, 2020, as a result of right elbow nondisplaced fracture and injury, avulsion fracture right elbow, complete triceps tendon rupture on right side, self-inflicted gunshot wound to right leg, fracture of lower femur bone, injury of unspecified nerve at lower leg level, chronic pain syndrome, and co-morbid conditions of deconditioning, chronic vertigo, hiatal hernia, insomnia, anemia, attention deficit disorder, and anxiety. His LTD benefits began on August 22, 2020, therefore the change in definition of disability occurred on August 22, 2022, and to receive benefits beyond 24-months months he must be disabled from any occupation as defined in the Policy. Benefits beyond August 21, 2022, were denied as the evaluation concluded he was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated March 1, 2022. Please see the March 1, 2022, correspondence for details of the determination. Mr. Lynn was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support your claim. Specifically, he was advised to submit the following information: *Medical evidence of a disabling condition to support ongoing disability; to include office visit notes, test results, treatment plans, physical therapy notes, operative reports, a valid functional capacity evaluation, as well as specific restrictions and limitations, and any other medical information from your physician(s) to support that you are unable to perform the duties of any occupation. You should also provide any additional information that you feel will support your claim.*

**Appeal**

We received your letter of appeal on behalf of Mr. Lynn on August 25, 2022.

In support of his claim, he submitted the following information:

- Medical records from Andrea Batchelor, MD dated March 14, 2022, through June 3, 2022
- Occupation descriptions Checker II and Diet Clerk

**Appeal Evaluation**

During the review of Mr. Lynn's appeal, his claim was reviewed by a nurse disability consultant. The result of the September 8, 2022, review is as follows,

Mr. Lynn ceased work on February 22, 2020 after suffering a fall at home with sustained injuries including right elbow nondisplaced fracture and injury, with a second fall due to tripping over his dog and landing on the arm, resulting in a displaced avulsion fracture {when a small piece of bone attached to a tendon or ligament, is pulled away from the main part of the bone} and complete triceps tendon rupture on the right side. He underwent repair of his tendon rupture on February 27, 2020, with Dr. Kendall Vague {orthopedic surgery}. Post-operatively, he developed an infection of his surgical site and underwent additional surgery on March 30, 2020, for removal of surgical hardware previously placed. He was treated for six weeks with intravenous antibiotics.

On May 3, 2020, he suffered an accidental self-inflicted gunshot wound to the right leg, which resulted in a comminuted {multiple breaks} fracture of his lower femur bone. He required closed reduction, external fixation, and subsequent repair of the femur fracture on May 6, 2020, with Dr. David Griffin {orthopedic surgery}. He required use of a bone stimulator for delayed fracture healing in the right leg and ongoing use of narcotic pain medications. He was found to have met the definition of disability to August 21, 2022.

Co-morbid conditions included chronic vertigo, hiatal hernia, insomnia, anemia, attention deficit disorder, and anxiety.

A January 28, 2021, right femur CT revealed areas of solid bone healing in the fractured area and other areas with no healing noted.

On April 20, 2021, he was seen by Dr. David Griffin {orthopedics} for follow up of his right femur fracture with delayed healing. He reported ongoing discomfort in the right thigh with pain radiating into his foot. He was using a cane for ambulation. He understood that a significant part of this was related to mild traumatic peripheral neuropathy from his gunshot wound. Exam revealed use of a cane, healed gunshot wounds, and significant limp on the right. Inflammatory lab work previously completed was normal and Dr. Griffin stated that his most recent CT scan had revealed areas of healing and areas of incomplete healing over the fracture site. His previously placed nail remained intact. Treatment options included further surgical intervention with exchange nailing procedure, which he opined might help with further healing and improve pain, otherwise weightbearing as tolerated activity and use of bone stimulator were other options. No new medication was prescribed, and Dr. Griffin stated he would follow Mr. Lynn from a distance and recommended a follow up in

eight weeks. There were no further office visit notes on file from orthopedics.

Mr. Lynn primarily treated with family medicine provider Dr. Andrea Batchelor. He was seen on September 29, 2021, for an annual visit and follow up of his chronic pain in his right leg, burning pain in his right foot from his gunshot injury, and chronic back pain. Mr. Lynn reported he was using Percocet twice daily and took Flexeril {muscle relaxant} at night. He reported having sinus pressure, and congestion for a couple of weeks and left ear discomfort. He was prescribed Amoxicillin for his left ear infection and recommended continuing his current medications. Exam revealed difficulty arising from a chair, ambulation with a cane, and tenderness to palpation over the right thigh.

On December 14, 2021, Mr. Lynn was seen by Dr. Batchelor for routine follow up and reported sinus pressure and left ear pain and itching. He had completed a course of antibiotics three weeks prior and reported ongoing chronic neck, back and right leg pain. He stated he could only move around or sit for 30 minutes and had trouble sleeping at night due to pain. He rated his current pain a 5/10 {0-10 scale, 10 being the worst}. Vital signs were stable, and exam noted ambulation with a cane and difficulty rising from a chair. Dr. Batchelor prescribed antifungal medication for a yeast related rash under the arms and treated his acute sinus infection with several antibiotics.

A letter dated February 3, 2022, from Dr. Batchelor stated that Mr. Lynn had been her patient since 2015 and outlined his chronic conditions and injuries causing his disability. She stated that he was only able to sit/walk around for 30 minutes at a time, needed to change positions frequently, ambulated with a cane, and use Percocet as needed for pain and Klonopin for anxiety. She opined that due to his restrictions, it was unlikely that he was able to work.

He was seen by Dr. Batchelor {family medicine} on March 14, 2022, for chronic pain follow up and reports of intermittent blisters occurring under his arms since his last visit. These were reported to be painful, and he had treated with antibiotics several weeks prior. He reported his current medications controlled his acid reflux, Adderall helped him stay awake during the day, and Klonopin calmed his racing thoughts at night. He reported ongoing pain in his low back and right leg which worsened with walking more than 100 yards for his back. Weather changed increased his leg pain, and he continued to have weakness in his right knee and numbness in his right foot. He noted he could only stand for 30 minutes at a time due to pain and sit for 30-40 minutes due to pain and stated he had driven to Florida to see his grandchild and had to stop every 30-40 minutes to get out and walk. He stated he had to lie down 2-3 times per day for 15 minutes to take pressure off his back and get feeling back in his right foot. Exam revealed decreased range of motion in the right knee, inability to fully extend the right knee in a seated position, ability to extend knee to 45 degrees from a flexed position, 4/5 strength in the right leg, and ambulation with a cane with normal right ankle range of motion. Dr. Batchelor recommended that he continue his current medications and use of Percocet for chronic pain. She stated he was unable to work due to mobility limitations. Follow up in 3 months was recommended.

A physician review was completed by Dr. Martin Hoffman {board certified physical medicine and rehabilitation} on January 5, 2022. Dr. Martin supported impairing diagnoses of right elbow fracture, right femur fracture, right thigh pain, and ankylosis {low or no range of motion} of the right knee. Restrictions were supported due ongoing reports of right thigh, foot and back pain with mobility limitations, and included: sitting unrestricted with intermittent brief position changes allowed, standing/walking occasionally with use of an assistive device, lifting/carrying up to 10 lbs.

occasionally and 5 lbs. frequently as long as carriage can be in one hand to allow for use of cane, no crouching, kneeling, ladder climbing, working at unprotected heights, commercial driving, operating heavy equipment, or safety sensitive machinery while using opioid medications. Full time work was allowed within the above referenced restrictions which were supported from September 1, 2021, to present day and ongoing. No evidence of medication side effects was noted, and provider contact was not made. See report for full details.

On June 3, 2022, he was seen by Brittany Tubbs NP {family medicine} for medication refills. He reported feeling fatigued after having dinner each day and could not stay awake once he got home for the day. He reported right ear pulsing and sinus pressure.

An August 25, 2022, letter received on appeal from you was reviewed.

The medical evidence on file revealed Mr. Lynn suffered multiple significant orthopedic injuries in 2020 with surgical repairs as noted above and ongoing pain and functional impairment due to his injuries. Most recent office visit notes on file are from primary care and revealed decreased range of motion in the right knee, inability to fully extend the right knee in a seated position, ability to extend knee to 45 degrees from a flexed position, 4/5 strength in the right leg, and ambulation with a cane with normal right ankle range of motion. He was using Percocet chronically for pain and Flexeril for right thigh muscle spasms. Dr. Batchelor has endorsed that he could only sit/walk around for 30 minutes at a time, needed to change positions frequently, ambulated with a cane, and used Percocet as needed for pain and Klonopin for anxiety. She opined that due to his restrictions it was unlikely that he was able to work. Based on the medical evidence on file in totality, further review of the records with a physician dual board certified in occupational medicine and internal medicine is recommended for comment on restrictions/limitations, durations, and future case management recommendations from August 22, 2022-forward. Peer to peer contact with Dr. Batchelor and Dr. Griffin may be beneficial to discuss his functional capacity and conditions.

During the review of Mr. Lynn's appeal, his claim was reviewed by Dr. Clayton T. Cowl, MD, MS, an independent physician who is board certified in occupational medicine, pulmonary disease and internal medicine. Based on his review of the medical records, Dr. Cowl concluded the following in a September 23, 2022, report,

Dr. Cowl indicated that he reviewed all of the medical documentation, however, provided the following summaries of Mr. Lynn's treatment:

*In brief summary, the claimant is a male (DOB: 12/20/1971). The listed date of disability is 2/22/20 after suffering a fall at home with injuries including a nondisplaced fracture of the right olecranon region, with a second fall due to tripping over his dog and landing on the arm, resulting in a displaced avulsion fracture and triceps tendon rupture on the right side. The claimant underwent surgical repair of his tendon rupture on 2/27/20 by Dr. Kendall Vague (Orthopedics), and the case was complicated by post-operative infection of the surgical site requiring additional surgery on 3/30/20 for removal of surgical hardware previously placed and he was given a 6-week course of antibiotics intravenously. Co-morbid conditions include chronic vertigo, hiatal hernia, insomnia, anemia, attention deficit disorder, and anxiety.*

*On 5/3/20, the employee suffered an accidental self-inflicted gunshot wound to the right leg which resulted in a comminuted fracture of his femur inferiorly. The claimant required closed reduction,*

*external fixation, and subsequent repair of the femur on 5/6/20 with Dr. David Griffin (Orthopedics), and use of a bone stimulator for delayed fracture healing in the right leg was noted with the need for chronic opioid pain medications.*

*Computed tomography (CT) imaging on 1/28/2021 of the right femur revealed areas of solid bone healing in the fractured area and other areas with no healing noted.*

*On 4/20/21, the claimant was seen by Dr. David Griffin for follow up of his right femoral fracture with delayed healing. The claimant reported ongoing discomfort in the right thigh with pain radiating into the lower extremity distally. The claimant is documented to have been using a cane for ambulatory assistance. There was documentation of trauma-induced peripheral neuropathy. Physical examination documented use of a cane, healed gunshot wounds, and significant limp on the right. Laboratory serologies appeared normal and Dr. Griffin stated that the claimant's most recent CT scan had revealed areas of healing and areas of incomplete healing over the fracture site. Dr. Griffin outlined treatment options that included further surgical intervention with an exchange nailing procedure, which he opined might help with further healing and reduce pain, otherwise weightbearing as tolerated activity and use of a bone stimulator. No new medication was prescribed.*

*The data provided suggested that the claimant was receiving care primarily from family medicine provider Dr. Andrea Batchelor. This included sequential visits such as on 9/29/21 for an annual visit and follow up of his chronic pain in his right leg, burning pain in his right foot from his gunshot injury, and chronic back pain. The employee reported he was using Percocet twice daily and took Flexeril (cyclobenzaprine) at night. The claimant reported having sinus pressure, and congestion for a couple of weeks and left ear discomfort. He was prescribed Amoxicillin for his left ear infection and recommended continuing his current medications. Physical examination revealed difficulty arising from a chair, ambulation with a cane, and tenderness to palpation over the right thigh.*

*On 12/14/21, the employee was seen by Dr. Batchelor for routine follow up and reported sinus pressure and left ear pain and itching. He had completed a course of antibiotics 3 weeks prior and the claimant reported ongoing chronic neck, back and right leg pain. The employee stated he could only move around or sit for 30 minutes and had trouble sleeping at night due to pain. He rated his pain at that time as a 5/10. Vital signs were stable, and exam noted ambulation with a cane and difficulty rising from a chair. Dr. Batchelor prescribed antifungal medication for a yeast related rash under the arms (tinea cruris) and treated the employee's acute sinus infection with several antibiotics.*

*A letter dated 2/3/22 from Dr. Batchelor stated that the employee had been her patient since 2015 and outlined his chronic conditions and injuries causing disability. She stated that he was only able to sit/walk around for 30 minutes at a time, needed to change positions frequently, ambulated with a cane, and used Percocet as needed for pain and Klonopin for anxiety. She opined that due to his restrictions it was unlikely that he was able to work.*

*The claimant was seen by Dr. Batchelor (Family Medicine) on 3/14/22 for chronic pain follow up and reports of intermittent blisters occurring under his arms since his last visit. These were reported to be painful, and the claimant had treated with antibiotics several weeks prior. The claimant reported his current medications controlled his acid reflux, Adderall helped him stay awake during the day, and Klonopin calmed his racing thoughts at night. The claimant reported*

*ongoing chronic pain in his low back and right leg which worsened with walking more than 100 yards for his back. Weather changes increased his leg pain, and he continued to have weakness in his right knee and numbness in the right foot. The claimant noted he could only stand for 30 minutes at a time due to pain and sit for 30-40 minutes due to pain and stated he had driven to Florida to see his grandchild and had to stop every 30-40 minutes to get out and walk. The claimant stated he had to lie down 2-3 times per day for 15 minutes to take pressure off his back and get feeling back in his right foot. Exam revealed decreased range of motion in the right knee, inability to fully extend the right knee in a seated position, ability to extend knee to 45 degrees from a flexed position, 4/5 strength in the right leg, and ambulation with a cane with normal right ankle range of motion. Dr. Batchelor recommended that the claimant continue his current medications and use of Percocet for chronic pain. She stated he was unable to work due to mobility limitations. Follow up in 3 months was recommended.*

*A physician review was completed by Dr. Martin Hoffman (PM&R) on 1/5/22. Dr. Martin supported impairing diagnoses of right elbow fracture, right femur fracture, right thigh pain, and ankylosis of the right knee. Restrictions were supported due to ongoing reports of right thigh, foot and back pain with mobility limitations, and included: sitting unrestricted with intermittent brief position changes allowed, standing/walking occasionally with use of an assistive device, lifting/carrying up to 10 lbs. occasionally and 5 lbs. frequently as long as carrying can be in one hand to allow for use of cane, no crouching, kneeling, ladder climbing, working at unprotected heights, commercial driving, operating heavy equipment, or safety sensitive machinery while using opioid medications. Full time work was allowed within the above referenced restrictions which were supported from 9/1/21 to present day and ongoing. No evidence of medication side effects was noted, and provider contact was not made.*

*On 6/3/22, the claimant was seen by Brittany Tubbs, NP (Family Medicine) for medication refills. He reported feeling fatigued after having dinner each day and could not stay awake once he got home for the day. He reported right ear pulsing and sinus pressure.*

*An 8/25/22 letter received on appeal from the employee's attorney to the insurer.*

Dr. Cowl indicated that the current primary impairing diagnoses are injury of unspecified nerve at lower leg level, unspecified leg, chronic pain syndrome and co-morbid condition of aerobic deconditioning.

Dr. Cowl indicated that the medical records submitted do support restrictions but not necessarily precluding Mr. Lynn from performing all physical maneuvers that would preclude gainful employment.

Of note, there were no specific records provided specifically addressing the timeframe in question listed of August 21, 2022, and continuing.

Restrictions precluding Mr. Lynn from any and all physical maneuvers would only be applicable for dates of hospital confinement from surgery and period of time following the procedures for rehabilitation and general recovery. However, Mr. Lynn, despite multiple impairments was noted to have retained the ability to perform a variety of physical functions outlined elsewhere in the report.

When asked if there were any non-medical circumstances identified in the medical records that may

adversely impact work, Dr. Cowl indicated there was no specific administrative or non-medical issues noted other than the fact that there appeared to be multiple sequential injuries addressed, such as the elbow fracture, and the femoral fracture with complications that included infection and poor bone growth upon healing.

Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine along with medication and discussion with providers, there was a supported level of impairment that would translate into restrictions or limitations from August 21, 2022, and continuing from an Internal Medicine and Occupational Medicine perspective. Mr. Lynn had weakness and pain of the lower extremity and was using a cane. This would limit certain activities as outlined below. Within reasonable medical certainty, the following would be considered medically necessary restriction estimates based upon all data reviewed:

- Sitting: up to 1 hour continuously for a maximum of 7 hours per day (allow change in position as needed)
- Standing: up to 0.5 hours continuously for a maximum of 2.5 hours per day (allow change in position as needed)
- Walking: up to 0.50 hours continuously for a maximum of 1.5 hours per day (allow change in position as needed with use of ambulator assistive device)
- Reaching at desk level: unrestricted
- Reaching overhead/below waist: occasionally
- Fingering/mousing/keyboarding/handling/grasping: frequently
- Climbing stairs: rarely (with use of grab rails)
- Climbing ladders/kneel/squat/crawl: never
- Twisting/bending at wrist: occasionally
- Balancing at heights: never
- Lift/carry: up to 20 pounds rarely or 10 pounds occasionally
- Push/pull: with up to 30 pounds of force rarely or 15 pounds of force occasionally
- Executive level cognitive functioning: unrestricted
- Ability to communicate with others: unrestricted
- Driving: occasionally
- Visual or auditory acuity activities: unrestricted

Dr. Cowl opined that these restrictions should be reassessed on December 2, 2022.

Dr. Cowl indicated that simply keeping Mr. Lynn out of work completely without the ability for the employer to attempt to accommodate physical restrictions is not reasonable in his opinion. Mr. Lynn was noted to have driven to Florida to see his grandchildren and although he claimed to have needed to stop periodically to stretch, this exemplifies the fact that he remained ambulatory and could perform a variety of maneuvers within certain medically appropriate physical restrictions.

Although no specific side effects were noted in the records submitted specifically pertaining to medications that would be functionally limiting, Mr. Lynn was noted to be prescribed chronically the use of opioid analgesics and other pain modulating agents that have the propensity to result in significant sedation; for this reason, performance of safety-sensitive duties such as working at heights, balancing, or climbing ladders, or operating machinery with moving parts that could potentially be injurious should be avoided. The weakness in the lower extremity would preclude continuous walking or standing beyond relatively brief periods of time and would made ladder

climbing risky and should be restricted.

To ensure that a fair interpretation of the records was conducted, Dr. Cowl spoke with Dr. Batchelor, and she clarified that Mr. Lynn was mostly impaired from the perspective of his back pain and femoral pain. He could likely only sit or stand for up to 30 minutes at a time before having to change positions to stretch. She also indicated that he was able to do certain things around the home but was limited in terms of his stamina. She agreed that he could do some physical maneuvers albeit at a mostly sedentary level of exertion.

Dr. Cowl also spoke with Dr. Griffin, who was cordial, but explained that he had not seen Mr. Lynn since January 2021 and really had no opinion about his current functional status. Dr. Griffin indicated that in the last time in the office, Mr. Lynn was ambulating with the assistance of a cane and was having chronic pain symptoms, but beyond that could not provide further details.

His claim was reviewed by a vocational consultant, for a transferrable skills analysis (TSA) based on his prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Cowl. The analysis showed that Mr. Lynn had the following skills:

**Skills & Abilities:** Following oral and written instructions to set up and operate production-type machines; using hands, eyes, and fingers to adjust machine controls, manipulate hand tools, or assemble objects; directing work of others; staying within prescribed standards and guidelines; identifying variations in size, shape, and texture of objects; and working in hazardous or noisy conditions.

The vocational consultant reviewed this file for a TSA update to the prior TSA performed by Jessica Greene, MS, CRC dated January 10, 2022. Please review the TSA report for complete details regarding demographics, capacities utilized, education, work history, transferable skills and alternative occupations with accompanying wages. By way of summary, Mr. Lynn is a 51-year-old Team Leader with a High School diploma. He had the following work history: Team Leader since 1991. The alternative occupations identified within the prior TSA included: Checker II and Diet Clerk.

Post hoc analysis completed to assess reaching overhead/below waist occasionally. Based on these updated capacities, the previously identified occupations of Checker II and Diet Clerk have each been precluded. Checker II and Diet Clerk have each been precluded given the fact that Mr. Lynn has not demonstrated any clerical background vias tasks such as copying completed in the past work history as well as giving consideration to the past industry and environment in which he worked.

The vocational consultant did review the attorney letter dated August 25, 2022, by Amanda Stansberry. While the physical concerns as noted within this letter were specific to the prior TSA and the peer review restrictions and limitations utilized for that review, this vocational consultant still took the time to ensure that the above concern of the ability to use a cane for ambulation was plausible. When the vocational consultant performed the TSA, the current updated medical restrictions outlined by Dr. Cowl were utilized and attention was given to the following restrictions which would be of concern to attorney Stansberry.

- Sitting: up to 1 hour continuously for a maximum of 7 hours per day (allow change in

position as needed)

- Standing: up to 0.5 hours continuously for a maximum of 2.5 hours per day (allow change in position as needed)
- Walking: up to 0.50 hours continuously for a maximum of 1.5 hours per day (allow change in position as needed with use of ambulatory assistive device)

When performing this review, the vocational consultant was able to identify an alterative occupation that was within Mr. Lynn's education, training, transferable skills and physical capacities identified. This occupation required one to sit constantly, however would allow for position changes as needed. Furthermore, one would be able to stand up to allow for these position changes. Please note that the restriction for standing did not indicate that use of an ambulatory assistive device was necessary. As a Surveillance System Monitor, one would not need to use their upper extremities more than occasionally to complete their monitoring tasks. This would allow for one to sit, if in fact hand usage was required. Additionally, in the current employment environment, and as a result of technological advancement, employers are providing a variety of workstation types and associated equipment that allow individuals opportunity to experience and sustain comfort in their respective work settings within the occupation(s). Therefore, given the culmination of the above noted information, Mr. Lynn would be able to perform the following alternative occupation.

| DOT Code | Occupation | Str | National Monthly Wage |
|---|---|---|---|
| 379..367-010 | Surveillance System Monitor | S | $2954 |

On October 5, 2022, we emailed you a letter which included a copy of the independent physician reviews and vocational consultant review performed in connection with Mr. Lynn's request for appeal. You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. We requested a response by October 26, 2022. In response we received the following,

- Medical records from Brittany Tubbs, Andrea Batchelor, MD, Whitney Dyer, CRNP dated June 3, 2022, through September 12, 2022
- Response to peer review dated October 21, 2022, from Dr. Batchelor

An addendum review was completed by Dr. Cowl on November 2, 2022, to consider the additional information received on Mr. Lynn's appeal. The result of the review is summarized below,

Dr. Cowl indicated the additional material submitted included sequential outpatient visit notes by Dr. Andrea Batchelor and/or Family Medical Associates West from June 3, 2022, through September 12, 2022, as well as a "To Whom It May Concern" letter dated October 21, 2022 by Dr. Batchelor.

In the initial report of September 23, 2022, it was clearly outlined that Mr. Lynn does indeed have physical impairments resulting in the need for physical restrictions for which specific estimates were provided based upon the objective data from an Internal Medicine/Occupational Medicine perspective. It is important to point out that the initial requires in the report was to make estimates of medically necessary restrictions, and not to be opined specifically about the ability to perform specific work duties within an occupation. A determination of disability is administrative in nature and based upon the specific details of a disability policy as well as a specific job description of the claimant, physical exertions required in a specific occupation, whether or not there are

safety-sensitive aspects of a particular occupation, and indirectly the ability for an employer to accommodate restrictions.

Dr. Cowl indicated that the additional information did not change any of his prior opinions or conclusions. The restrictions and limitations have been previously outlined above.

Determinations made by The Lincoln National Life Insurance Company are based on the provisions outlined in the LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. Therefore, an award of Social Security Disability Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Group Disability Income Policy.

In our review of Mr. Lynn's claim, we fully considered the totality of all medical documentation received. We also obtained and considered independent medical reviews and a vocational review that were not considered by the Social Security Administration in its determination process.

It is important to clarify that the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for disability benefits. The focus of our assessment was not whether or not a condition exists; but rather whether or not impairment exists that would preclude Mr. Lynn from performing the duties of any occupation.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Mr. Lynn's entire claim. In summary, we acknowledge that he may have continued to experience some symptoms associated with his condition beyond August 21, 2022. However, the information does not contain physical or mental exam findings, diagnostic test results or other forms of medical documentation supporting his symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of the occupations identified as being with in his functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of his claim, our position remains that proof of his continued disability in accordance with the Policy provisions after August 21, 2022, has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**<u>Policy Provisions</u>**

In order to continue receiving benefits, Mr. Lynn must satisfy the requirements of all Policy provisions that state, in part:

> ***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*
>
> ***"Disability"*** *or* ***"Disabled"*** *means:*
>
> 1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*Applicable to Class 1A, 1B:*

> *b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "**Disability**" or "**Disabled**" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

> *1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
>
> *2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
>
> *3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Lincoln.*

***Discontinuation of the Long Term Disability Benefit***

*The Monthly Benefit will cease on the earliest of:*

*8. the date the Covered Person is no longer Disabled according to this policy;*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Mr. Lynn was entitled to appeal the decision made by The Lincoln National Life Insurance Company, and to submit any additional information he wished to be considered as part of the appeal. The Lincoln National Life Insurance Company has conducted a full and fair review of his appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, his administrative right to review has been exhausted; no further review will be conducted by The Lincoln National Life Insurance Company and his claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to his claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If his plan is subject to ERISA, he may have other voluntary alternative dispute resolution options,

such as mediation.  One way to find out what may be available is to contact his local U.S. Department of Labor Office or your state insurance regulatory agency.  In addition, once all required reviews of his claim have been completed, he has the right to bring a civil action under applicable law.  His employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is November 4, 2025

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any The Lincoln National Life Insurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by The Lincoln National Life Insurance Company are based on the provisions outlined in the Clayton Homes Group Disability Income Policy.  These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities.  No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact The Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Josh Tuliano
Claim Resolution Specialist

Phone No.: (888) 437-7611 Ext. 16440
Secure Fax No.: (603) 334-0401